Hon. Frank J. Rogers Commissioner Division of Criminal Justice Services
Your letter of January 26, 1978 submits for my consideration the question of whether a locality may award a contract through private negotiation after an unsuccessful attempt had been made to competitively let such contract. I understand that federal funding is available for the contract and that your agency must authorize the release of such funds.
You state that the City of Newburgh advertised for bids pursuant to Section 103 of the General Municipal Law to provide an improved communications system for law enforcement agencies in the Newburgh area and, although two vendors expressed interest in the contract, only one response was received. The proposal which was offered did not meet specifications and was held to be non-responsive.
You further state that the City of Newburgh negotiated with the sole bidder in an unsuccessful attempt to develop a proposal in compliance with the specifications; that the City of Newburgh then concluded successful negotiations with the other company which expressed initial interest in the contract; and, that readvertisement of the contract would not produce a different result.
Section 103 (1) of the General Municipal Law provides that the City of Newburgh may in its discretion reject all bids and readvertise for new bids where no bidders have complied with specifications. The statute does not provide for negotiation of contracts in excess of $1,500.00 although a case can be made for allowing negotiation in situations where no possibility of competition exists. (See 1934 Atty. Gen. 87; 1947 Atty. Gen. 95; 1961 Atty. Gen. 15.) It is not clear that the latter situation exists in this instance. In your letter you state:
 "The City of Newburgh was in the market for two telecommunications systems to enable its police department to communicate with neighboring departments. While the specifications prepared by Newburgh are quite precise in detailing the technical and performance specifications of the communications system being sought they were drafted to permit maximum flexibility for prospective suppliers in terms of the mechanics of filling the communications need. Rather than buying police radios (for which public advertising for bids would be perfectly adequate), Newburgh was in the market for a communications capability; any of a number of alternative systems could satisfy Newburgh's needs."
If the specifications are as broad as you state, it is conceivable, however unlikely you may deem it, that if the contract is readvertised, another vendor could become interested and submit a bid, not to mention the possibility that the original bidder may modify its proposal to conform to specifications. Failing the above, the vendor with whom the City of Newburgh successfully negotiated, assuming that company submits a bid, should be the successful low bidder.
I am not convinced that the overwhelming weight of public policy which requires a strict construction of General Municipal Law, Section 103 has been overcome by the facts presented. In my opinion, unless the City of Newburgh is in imminent danger of losing its Federal Grant to the detriment of future police operations (which does not appear to be the case), the contract should be re advertised on the conditions that will insure maximum exposure to all possible prospective bidders.